SUCCESSION OF ANN WATERS, WIDOW ZACHARIE.

12   97
115  1083

The heir who has permitted thirty years to elapse without having done any act showing an intention
to accept the succession is barred by prescription from any rights as heir.  C. C. 1023.

APPEAL from the Second District Court of New Orleans, *Morgan*, J.
*J. W. Duncan* and *C. B. Singleton*, for opponent and appellant.  *George Eustis*, for appellee.

MERRICK, C. J.    Article 1023 of. the Civil Code is in these words: "The faculty of accepting or renouncing an inheritance becomes barred by the lapse of time required for the longest prescription of the rights to real estate." The French text of the Article and Article 789 of the Napoleon Code are identical.

The French commentators are much divided as to the meaning of the Article, so much so that Marcadé, after examining the opinions of Delaporte, Malville, Vazeille, Duranton and Malpel, says that of the *other* authors who have taken part in the controversy, their systems may be reduced to three.  He however adds his own, making a fourth.  The interpretation of the article in question is forced upon us by the issues in this case, and we thus perceive at the outset that the French authorities with so much discord among them can furnish but little assistance in the present inquiry.

Did the Article read simply, the faculty of accepting an inheritance becomes barred by the lapse of time required for the longest prescription of the rights to real estate, it would present no difficulty, and we could have no hesitation in concluding that the heir who should suffer thirty years to elapse without evincing his intention to accept a succession then opened would lose his right of accepting, and the inheritance could not be claimed by him into whose hands soever it might have gone.

The prescription, however, purports to be a bar not only to the faculty of accepting but also that of renouncing.  Now if a party who has not accepted the succession within the thirty years cannot afterwards accept it, it would seem that he had effectually renounced the succession.  Therefore, the difficulty of the interpretation arises in our endeavour to ascertain whether the legislature may not have intended something more by the limitation of the period in which the heir may renounce.  But if the Article is to be taken literally then he who is called to the succession, being seized thereof of right, cannot renounce after thirty years, he is therefore unconditional heir, but not having accepted the succession he has also lost the faculty of accepting it, and, therefore, at the same time he is not heir—which is absurd.

Some writers, however, endeavor to reconcile even this difficulty by supposing that the person called to the succession must be considered as heir as it respects the creditors, for he cannot renounce; and that he is not heir as it respects those in possession, for he cannot accept.  But this violates one of our rules of interpretation, because it distinguishes where the lawgiver does not distinguish, and it violates the equitable maxim: *Qui sentit onus commodum debet sentire*.

Marcadé, who from his late position and the force of his reasoning, has recently exercised a great influence upon the jurisprudence of France, and whose arguments have not been without weight on many questions on this side of the

13 .

SUCCESSION OF
WATERS.

Atlantic, deserves to be quoted on this question, he says, vol. 3 163, "Pour nous, ces interprétations multipliées et si contradictoires nous ont toujours étonné, et le vrai sens de l'Article nous a toujours paru facile. L'Article, en effet, déclare que le successible, après trente ans, depuis l'ouverture de la succession, aura perdu définitivement la faculté *d'accepter ou de répudier*, c'est-à-dire le droit de choisir entre l'acceptation et la renonciation : en sorte que, après ce délai, il ne peut plus opter et sa position est irrévocablement arrêtée. Et quelle est cette position ? rien de plus simple ce nous semble. Par le fait même de la mort du défunt, le successible s'est trouvé revêtu de titre d'héritier, il a été saisi de la succession : seulement il avait le choix ou de rendre cette position irrévocable par une acceptation, ou de s'en dépouiller par une renonciation. Or, la loi dit qu'après trente ans de silence, il n'a plus ce choix : donc il reste alors *in statu quo*, c'est-à-dire qu'il demeure héritier sans qu'il lui soit désormais possible de renoncer."

This interpretation, which appeared so easy (*facile*) to Mr. Marcadé, seems to us full of difficulty when applied to the Code of our own State. For, if the Article only means that by the silence during the thirty years the person called to the succession has lost the right to renounce, and has become absolutely fixed as heir ; the other portion of the Article concerning the faculty of accepting, as Mr. Zacharie justly observes, is obliterated.

Again, it is not to be supposed that the legislature, if that were its intention, would have expressed its meaning so obscurely or would have placed so prominently in the sentence the words " the faculty of accepting," and which in the context would strike almost every reader as the most prominent and therefore the principle object of the Article of the Code in question, and he would find, moreover, on reflection that the heir who neglected to bring his action to revindicate a succession was barred by the lapse of thirty years; C C. 3512. That the heir who suffered his co-heirs to enjoy the succession separately for thirty years was also precluded from his action of partition, C. C. 1228, and he might well suppose that the legislature intended the like provision in regard to the acceptance of a succession, which can hardly be distinguished from these two prescriptions.

It seems, therefore, much more reasonable to give effect to what appears to us the principal object of the Article 1023 than to annul it altogether, and carry into effect that which appears only to be secondary, and certainly occupies only a second place in the sentence.

It is true that Art. 1007 of the Code declares that he who is called to the succession, being seized thereof in right, is considered the heir as long as he does not manifest the will to divest himself of that right by renouncing the succession." The seizin here spoken of is only by relation to the acceptance. If the heir accepts, he is considered as always having been heir ; if he renounces, he is considered as never having been heir, C. C. 981. Moreover, during the period in which the heir neither accepts nor renounces the succession, it is subject to prescription in favor of third persons, and to all lawful acts done with the administrator or curator, (C. C. 1024, 3492 ; 2 An. 468,) consequences which are inconsistent with a real seizin.

We, therefore, conclude that the legislature intended to declare in one part of the Article, that if he who is called to an inheritance is silent for thirty years, and does no act, evincing his acceptance of the succession, he is barred by prescription. We do not find it necessary to put any construction upon

the second portion of the Article. It will be in time to consider the difficulties presented by it whenever the case arises in which their explanation, if possible, is required.

The facts to which the foregoing conclusion applies are the following : *Mrs. Ann Waters, widow Zacharie*, died previous to the 19th day of September, 1822, leaving several children and a last will and testament, in which she appointed *James W. Zacharie*, her son, and *Richard Relf*, her son-in-law, executors. The will was admitted to probate, and letters of executorship issued on the 24th, and the executors qualified by taking the prescribed oath on the 25th of September of the same year, 1822. *Louisa Caroline Adelina Zacharie*, one of her daughters, was married to the present opponent. By that marriage there was issue, one child. *Mrs. Shields* died on the 9th day of October, 1823, and her child, on the 9th day of March, 1824, just five months afterwards. By the death of his wife and child, as heir to his child, he acquired the right by transmission to his wife's interest in her mother's estate. That estate the executors represented as insolvent. The opponent contends that it was solvent. The difference arises from the respective constructions which the two parties put upon the sale of the plantation and slaves. The one party contending that, in addition to the price bid ($100,000) the purchaser bound himself to pay certain outstanding mortgages, amounting to $72,000, the other party denying the justness of this conclusion.

The present proceedings were commenced by the opponent on the 11th day of May, 1854, it being the first act on the part of the opponent, so far as we can learn from the record, showing an intention to accept the succession of his child, his wife and of her mother. A period of more than thirty years had therefore elapsed between the time opponent was called to the successions of his child, wife and mother-in-law, and the commencement of this suit. We are, therefore, not embarrassed with the one year in which the seizin of the executors continued, to wit : from the 25th day of September, 1822, to the 25th day of September, 1823, nor the five months during which the child might be supposed to have been a minor. It may, however, be proper to remark that the will contained no clause continuing the powers of the executors, and that, therefore, under the Code of 1808, they had no power longer to represent the succession ; Old Code 244, Art. 166 ; 4 M. R. 340, 609 ; 1 N. S. 243 ; 16 L.R. 344. Their acts after that period must be viewed as those of *negotiorum gestores*.

If the construction which we have placed upon Article 1023 of the Civil Code is correct, it must follow that *Theodore Shields*, by his silence and inaction for more than thirty years, is barred from the prosecution of this suit.

The question standing at the threshold of our inquiries being thus decided adversely to the pretensions of the opponent, it is idle to pursue our investigations further.

The judgment dismissing the opposition is affirmed.

SPOFFORD, J., concurring. The equivocal phraseology of Article 789 of the Napoleon Code, which has so long puzzled and divided the French commentators, was unfortunately perpetuated in our imitative codes.

We have to determine not what was meant in France, but what was the understanding of the Louisiana Legislature. In the search for that understanding, we should look at all the legislation upon the same subject, since an ambiguous phrase in one Article may sometimes be made clear by reference to an-

other Article in connection with it. Especially if our lawgivers, while upon the general subject, have added anything to that which they borrowed from the French Code, such additions may disclose what was their understanding of the doubtful Article ; and what they meant is to us the law.

"The faculty of accepting or renouncing an inheritance, becomes barred by the lapse of time required for the longest prescription of the rights to real es-estates." C. C. 1023.

The ingenious theory of Marcadé and some others, upon the construction of this Article is, that it creates no prescription against the faculty to accept, nor yet against the faculty to renounce *per se ;* but that the faculty of choosing between an acceptance and a renunciation alone, is barred by the lapse of thirty years; so that if the heritable person holds his peace and makes no choice during that term, he becomes irrevocably and unconditionally heir by the operation of law.

But the Legislature which adopted our Civil Code in its present form, gave unmistakable evidence of an intention on their part to organize a prescription against the *right of accepting* an inheritance, and not merely against an option between acceptance and renunciation. They originated and added to the Old Code two clauses in Article 1014, the last of which declares : "If, on the contrary, the heir has only refused to accept and has not renounced, [i. e. has neglected to avail himself of this right of choice] he can claim the surplus [alluded to in the preceding clause] on accepting the succession, *provided his right of* ACCEPTANCE *be not prescribed against.*"

Here is a legislative recognition of the existence of a special prescription against the *right of acceptance.* Where is the term of that prescription to be found, if not in Article 1023 ?

A similar argument might perhaps have been deduced from an expression in Article 790 of the Napoleon Code, which was adopted into both of our Codes, and is thus translated in the first clause of Article 1024 of the Code of 1825 : "So long as the prescription of the *right of accepting is not acquired against the heirs who have renounced,* they have the faculty still to accept the inheritance, if it has not been accepted by other heirs, without prejudice, however, to rights which may have been acquired by third persons upon the property of the succession, either by prescription or by lawful acts done with the administrator or curator of the vacant estate."

Marcadé sought to avoid the difficulty which this Article doubtless suggested to his analytic mind, by treating it as if it established an exceptional prescription against the right of accepting only on the part of an heir who had renounced ; but this led him into what appears to me to be the greatest difficulty of having to supply by analogy, a special term for *a prescription against the right of accepting,* which, according to his view, was nowhere regulated by the law maker, and only existed as against one who had renounced. " *Ce renonçant,* dit notre Article, pourra accepter encore, 'tant que la prescription du droit d'accepter n'est pas acquise' *contre lui.* Quel est le délai de *cette* prescription ? *La loi ne le dit pas explicitement ;* mais il paraît évident que notre Article doit s'expliquer par l'Article précédent, et que le délai de trente ans depuis l'ouverture de la succession, qui éteint *le choix* entre l'acceptation et la répudiation, est aussi celui qui éteint le droit d'accepter *organisé par notre disposition.*" 3 Marcadé, 238.

But here again our legislators, both in the Codes of 1808 and of 1825, have added to the provisions of the Code to which they were so much indebted an original clause, which shows that they thought something more than an option was barred by the Article under discussion. They went on to declare, that " in like manner, so long as the *prescription of renunciation* is not determined the heir may still renounce, provided he has made no act to make himself liable as heir."

Our lawgivers then have placed in antithesis, " the prescription of the right of accepting" and "the prescription of renunciation." Is it possible that this could have meant that there was no prescription against either faculty, but only a prescription against a choice between the two ?

But it is said that if the right of acceptance is barred by thirty years, it was unnecessary to say any thing about the faculty of renunciation. This argument would be unanswerable to my mind, if all the other interpretations proposed to be put upon Articles 1023, did not, *under our Code*, involve analogous or still graver objections.

The rule that some effect should be given to all the words of the law, is qualified by the condition that it be possible. If lawgivers sometimes nod, if they occasionally add an idle word to their statutes it is no more than the great masters of human wisdom in all departments of letters have done before them.

It is true that, where the right of accepting an inheritance is barred, the faculty of renunciation falls with it, as there is nothing left for the heir to renounce.

I think the Legislature of Louisiana intended in Article 1023, to fix a term of prescription against the right of acceptance, and to intimate the consequence of its lapse without an acceptance ; that consequence, I think, is that the *successible* becomes a stranger to the succession.

The executors and unconditional heirs have an interest to plead this exception against the pretended heir, who opposes their account.

I, therefore, concur in the decree.

Argument of counsel for opponent and appellant, on an application for a rehearing :

With your honor's indulgence, we propose, in the following pages, to elaborate some of the points made in our application for a re-hearing.

I. The question which first commands our attention is, what is the true interpretation of Article 1023 of the Civil Code ?

A strictly literal interpretation of this Article, that would give effect to every part of it, is impossible. The true meaning lies below the surface, but can easily be brought to view by the aid of other provisions of our Code relating to the same subject matter.

It is declared in general terms in Articles 934, 935, 936, 937 and following, that " the succession is acquired by the lawful heir, who is called to the inheritance immediately after the death of the deceased person to whom he succeeds," see also O. C. 234, Art. 122, 124; and "that this right is acquired by the heir by the operation of law alone, before he has taken any steps to put himself in possession or has expressed any will to accept ?"

This rule refers to testamentary as well as to legal heirs but not to particular legatees. Art. 934.

We are not to understand, from these provisions, that the heir who is called to the inheritance acquires it by mere operation of law, independant of any act of his own, immediately after the death of the deceased person to whom he succeeds, in every instance. Other provisions of the Code place limitations on these, which must not be disregarded.

For example, *irregular heirs* "before being put into possession of the estate left to them are not considered as having succeeded to the deceased from the instant of his death." Art. 944.

Again, the universal legatee by the death of the testator is seized in full right of the succession, independant of any acts of his own, in default of heirs to whom a portion of the testator's property is reserved by law. Art. 1602, (see French text.) But when there are forced heirs living at the decease of the testator the succession is not acquired by the universal legatee immediately on the death of the testator, but on the contrary, the forced heirs are seized of right by his death. Art. 1600; see also O. C. 234, Art 122, 126.

The rule, that the heir is seized by mere operation of law, independent of any act of his own, immediately on the death of the person to whom he succeeds, we find, is subject to the following modifications and exceptions:

1. Those heirs to whom a certain portion of the property is reserved by law are seized of right immediately on the death of their ancestor.

2. The universal legatee is also seized of right, immediately on the death of the testator, unless there are forced heirs living who have not been legally disinherited, (Art. 1617,) in which case the seizin only vests in him after he has complied with the requisites of Art. 1600.

3. The other regular heirs (not forced) are seized of right, immediately on the death of their ancestor, provided there are no forced heirs or a universal legatee; Art. 1600, 1602, 1605. In which event they are not.

4. The legatee under a universal title is seized of right, immediately on the death of the testator, only in default of regular heirs (either forced or not) and a universal legatee. Art. 1605.

5. Irregular heirs are never seized of right by the death of the person to whose succession they are called; they are permitted to take possession only by the order of court. Art. 925, 943.

If we keep these distinctions in view we will experience no difficulty in arriving at the true meaning of Article 1023.

Article 1007 provides that, "he who is called to the succession, being seized thereof in right, is considered the heir as long as he does not manifest the will to divest himself of that right by renouncing the succession."

That is to say, whenever the law vests the seizin in the person called to the succession: it also invests him with the quality of heir; and that quality he can only divest himself of by renouncing the succession in the manner prescribed by Art 1010. So long, therefore, as the seizin lasts the heirship continues.

Article 1023 provides that, "the faculty of accepting or renouncing an inheritance becomes barred by the lapse of time required for the longest prescription of the rights of real estate." Now, what is the *acceptance* of an inheritance? It is nothing more than the assumption of the quality of heir, while the *renunciation* of an inheritance is simply the disavowal or rejection of that quality. It is, therefore, the right of assuming the quality of heir that is lost when the faculty of accepting is barred, and the right of disavowing or disclaiming it that is lost when the faculty of renouncing is barred by prescription. Now, Article 1023 means simply this: Whenever an acceptance is necessary to invest a person with the quality of heir it must be made within thirty years from the time he is called to the succession, or the faculty is lost. And, on the other hand, whenever a renunciation is necessary to divest the person called to the succession of the quality of heir it must be made within thirty years from the time that quality is imputed to him, or the faculty of making it is lost.

Now, we have already seen that whenever the person called to the succession is seized thereof in right, and in this case only, he is invested with the quality of heir by mere operation of law, independent of any act of his own, and is considered heir so long as the seizin lasts. In this case, therefore, acceptance is not necessary to invest him with the quality of heir, and he, therefore, does not lose his right to the inheritance by the lapse of thirty years. But, on the other hand, inasmuch as the law, in this case, imputes to him the quality of heir, he must, if he wishes to divest himself of that quality, do it within the period limited, or he loses the faculty of so doing and becomes heir irrevocably.

Our construction of this Article may be stated as follows:

1. Whenever an acceptance is necessary it must be made within the time limited, or the faculty is lost.

It is only necessary when the person called to the succession is not seized thereof in right, and is not consequently invested with the quality of heir by mere operation of law.

2. Whenever a person is invested with the quality of heir by operation of law, he can only divest himself of it by a renunciation made within the time limited.

The practical effect of this construction is as follows:

The forced heir loses the faculty of renouncing by the lapse of thirty years.

So also does the universal legatee if there are no forced heirs. If there are forced heirs, however, it is the faculty of accepting, which he loses by the lapse of that period.

Regular heirs (not forced) lose the faculty of accepting by the lapse of that period when they are forced heirs or a universal legatee who have renounced; but, if there are neither forced heirs or universal legatee, he loses the faculty of renunciation.

The legatee under a universal title, when there are forced heirs, a universal legatee or other regular heirs, loses the faculty of accepting by the lapse of thirty years; when there are neither, it is the faculty of renunciation he loses.

The irregular heir loses the faculty of acceptance by the lapse of that period.

This construction of Article 1023 is supported by the following considerations:

1. Without violating any rule of interpretation, and by adhering almost to the letter, it gives effect to every part of the Article. And, in this respect, it has the advantage of your Honors' construction, which virtually eliminates one entire clause—a mode of interpretation only to be resorted to as the surgeon resorts to the knife in the last extremity. Every rule of construction should be consulted before the Judge assumes the functions of a legislator.

2. It is consistent with, and gives effect to other provisions of the Code relating to the same subject matter, in which respect your Honors' construction is again defective.

For example: Article 1024 provides that "So long as the prescription of the right of accepting is not acquired against the heirs who have renounced, they have the faculty still to accept the inheritance, if it has not been accepted by other heirs, without prejudice however to rights which may have been acquired by third persons upon the property of the succession, either by prescription or lawful acts done with the administrator or curator of the vacant estate."

"In like manner, so long as the prescription of renunciation is not determined, the heir may still renounce, provided he has done no act to make himself liable as heir."

It is the last clause of this Article which cannot be reconciled with the views which your Honors have expressed. Mr. Justice Spofford treats the clause, "faculty of renouncing," in Article 1023, as surplusage. A vice from which, unfortunately, our legislation is not free. Article 1023 is copied from the French Code, and is, in fact, but a literal translation of Article 789. Now, admitting the possibility that the author of the French Code inadvertently inserted the clause referred to, and that the compilers of our Code copied the error without detecting it, this however does not account for the presence of this clause, or a similar one, in the last paragraph of Article 1024, which paragraph is not found in the French Code. If it crept into Article 1023 by error, it is not likely that our Legislature would have taken especial pains to perpetuate it by reproducing it in the subsequent Article, by the insertion of a paragraph for that very purpose. It is evident that our Legislature, by thus adding to the legislation of the French Code, intended to provide for certain cases which they foresaw might arise under our Code. *  *  *  *  *

But we contend that the Legislature intended to fix a term of prescription against the faculty of renouncing also; and if it has not made its intention sufficiently clear by Article 1023, we cannot fail to discern it in the subsequent Article; and the construction which we have put on Article 1023 is consistent with this intention.

The law, as we have seen, invests certain persons with the quality of heir, independent of any act of their own, and if they suffer a certain period to elapse without divesting themselves of that quality, by a renunciation of the succession, they lose the faculty of so doing; but they may renounce at any time previous to the expiration of that period; or in the language of Article 1024,

SUCCESSION OF
WATERS.

"so long as the prescription of renunciation is not determined, the heir may still renounce, provided *he has done no act to make himself liable as heir*."—Can.the meaning of this Article be mistaken? Does it not clearly refer to a class of persons who, without having accepted the succession or having intermeddled with it in any way, are nevertheless considered heirs so far, that unless they divest themselves of that quality within a certain period by renunciation, lose the faculty of doing so thereafter, and become irrevocably liable as heir? It does not refer to the heir who has expressly accepted: for after an acceptance there can be no renunciation. It does not refer to the person who has made himself liable as heir, by a tacit acceptance, for he is expressly excepted by the Article. It must, therefore, refer to the person who has remained silent, who has abstained from the succession. But unless the seizin of the inheritance is vested in this person, unless he is considered heir independent of any act of his own, what has he to renounce?—what does he lose if the faculty of renunciation is barred?—and what are the consequences to him?

3. His Honor, the Chief Justice, remarks that "the seizin spoken of in Article 1007 of the Code, is only by relation to the acceptance. If the heir accepts, he is considered as always having been heir: if he renounces, he is considered as never having been heir." C. C., 981.

Your Honor does not, we conceive, intend to say that there is no seizin until after acceptance; but rather, that the seizin is given in expectation of a future acceptance, and is not real. This opinion we respectfully submit is erroneous. The seizin spoken of in Article 1007 is an independent fact. It has no relation whatever to the acceptance or any other act of the heir. It vests in him by mere operation of law, and he cannot prevent it. C. C., 935. It continues in him, without any acceptance, until he has renounced the inheritance. Article 1007. It qualifies him to do certain acts and to transmit rights, which he could not do were it not a real seizin. Arts. 936, 937, 938 and 939. And it is in consequence of the very fact of this seizin being vested in him by mere operation of law, independent of any act of his, immediately on the death of his ancestor, that his acceptance, when made, takes effect from the day of the opening of the succession. Domat C. L., Vol. 2, Art. 2477, Cushing's edition.

It is the divesture of the seizin which takes place by relation. That is to say, the heir who renounces is considered as never having been invested with it. Thus the Code, Art. 940 says: "If the heir accepts, he is considered as having succeeded to the deceased from the moment of his death." But he is considered so before he accepts, and even if he never accepts, provided he does not renounce. Art. 938 says: "The heir is considered as having succeeded to the deceased from the instant of his death." So that his acceptance does not alter his relations in the slightest degree towards the succession; nor does it invest him with a single right which was not already invested in him by operation of law; it simply takes away from him the right of renouncing. But if he rejects the succession, says Art. 960, he is considered as never having received it, which very distinctly implies that up to the time when this renunciation is made, he is considered as having received it. The seizin, therefore, of the heir is no way affected by his acceptance, though it is by his renunciation.

But admitting your honors' view to be correct, are we to understand that no distinction is to be made between the heirs in whom the seizin of the succession is vested by operation of law, and those who can only acquire it by some act of their own, in the application of the provisions of Article 1023, simply because that seizin is by relation to the acceptance? It is difficult to discover by what process of reasoning such a conclusion is deduced from the premises. Whether this seizin is by re.ation or not, it produces important legal effects. See Arts. 936, 937, 938 and 939, and the person in whom it is vested is considered heir so long as it continues; and he can only divest himself of it by a renunciation, by public act. His renunciation is never presumed. C. C. 1007, 1010. Hence in applying Art. 1023, we must distinguish, unless we disregard all rules of interpretation, between those persons who are already seized of the inheritance, who are invested with the quality of heir without an acceptance, and those who are not. The distinction between them is too well defined to be overlooked, and it has been too studiously observed by the Legislature to be disregarded by the Judge. There is not a principle contained in the Code, which the Legislature has been more anxious to impress upon us, than that respecting the seizin of the heir. It is first enunciated in Art. 934; it is repeated in Arts. 935, 936, 937, 938, 939, 940, 943, 1007, 1600, 1602 and 1617.

And as if the Legislature intended to provide against the possibility of its being overlooked, in the application of the provisions contained in the section respecting the renunciation of successions, (in which section Art. 1023 occurs,) it has been placed at the very beginning of that section. Art. 1007.

4. Again, your honor remarks, "moreover, during the period in which the heir neither accepts nor renounces the succession, it is subject to prescription in favor of third persons, and to all lawful acts done with the administrator. C. C. 1024, 3492. 2 Ann. 468. Consequences which are inconsistent with a real seizin." If your honor means by *real seizin*, actual or corporeal possession, these consequences are certainly inconsistent with it; but in this case, would the heir who has accepted without having obtained the corporeal possession of the effects of the succession, be in any better position than the succession was previous to his acceptance? Although the consequences mentioned by your honor are inconsistent with the corporeal possession of the effects ·of the succession, they are nevertheless entirely consistent with the seizin which the law vests in the heir, and do not in any manner derogate from its real character.

Seizin is either in *fact*, or in *law*. The seizin of the heir is a seizin in law. That of the actual possessor is a seizin in fact. I need not say that, while one person is seized in law, another may be seized in fact—for these are the very conditions necessary to the existence of prescription.

The prescription mentioned in the Articles of the Code, referred to by your honor, is the ordinary prescription, by which property is acquired and debts discharged.

"The prescription by which property is acquired, is a right by which a mere possessor acquires the property of. a thing which he possesses, by the continuance of his possession during the time fixed by law." C. C. 3421.

"Prescription runs against all persons, unless they are included in some exception established by law." C. C. 3487.

Now Articles 1024 and 3492 simply mean, that when a third person has acquired the actual possession of any of the effects of a succession, he can prescribe for them notwithstanding the succession has not been accepted, or is vacant. That is to say, vacant estates, and successions which have not been accepted, are no exception to the general rule laid down in the Article cited, to wit, 3487. Prescription runs against them, as it runs against every person not included in some exception established by law.

To say, therefore, that the seizin of the heir who has not accepted is not real, because third persons may acquire rights by prescription against the succession, during the period it remains unaccepted, is to say that the seizin of the owner of a thing in the actual possession of a third person is never real, because that person may prescribe for it, or that the seizin of the heir who has accepted is not real, because the actual possession of some of the effects of the succession may be in a third person.

The seizin of the heir is a seizin in law, until he has obtained actual possession of the effects of the succession. But it is nevertheless a real seizin; and its nature is in no respect changed by a simple acceptance; in other words, it continues a seizin in law, notwithstanding an acceptance, until he takes actual possession of the estate.

It is probably in view of the fact that the right of possession which ·the deceased had continues in the person of the heir, as if there had been no interruption, and independent of the fact of possession, (C. C. 936,) that the lawgiver included successions which have not been accepted, or which are vacant, within the operation of Article 3487; because it would seem unjust that prescription should run against these estates, unless in contemplation of law there was some person in existence whose interest and right it is, to look after and protect them. Now this right it gives to the heir in whom the seizin is vested, before any acceptance on his part. Art. 939.

5. Again, your honor remarks, "that if Article 1023 only means that by silence during thirty years, the person called to the succession has lost the right to renounce, and has absolutely become fixed as heir, the other portion of the Article is obliterated." This is the interpretation commented upon by Duranton, vol. 6, sec. 488.

The construction we propound is not liable to the objection urged, for it gives full effect to every part of the Article, and almost, in accordance with the very letter, supplying nothing but what is necessarily implied.

14

Whenever it is necessary in order to invest the person called to the succession with the quality of heir, that he should accept, he must do so within thirty years, or he loses the faculty of doing so. Whenever, on the other hand, the law invests him with that quality, then if he wishes to divest himself of it, he must do so by renouncing the inheritance before the lapse of thirty years, or he loses the faculty of so doing.

Your honor further says, that it appears to be the principle object of Art. 1023, to fix a term of prescription against the acceptance of an inheritance. Now the argument in favor of this view, which is based principally on the circumstance that the term *acceptance* holds a more prominent position in the Article than that of *renunciation*, (because it comes before it,) is scarcely conclusive; nor does it derive much support from the (what your honor seems to regard) analogous provisions of Arts. 3512 and 1228. That the Legislature intended to fix the term of prescription against the right of acceptance, cannot be doubted; but it is equally true (if an intention can be clearly expressed in words) that it intended also to fix a term of prescription against the right of renunciation; and any construction of Art. 1023 which does not give effect to this intention, must be radically wrong.

6. Again, Mr. Justice Spofford says: "But the Legislature which adopted our Code, in its present form, gave unmistakable evidence of an intention to organize a prescription against the right of accepting an inheritance, and not merely against an option between acceptance and renunciation. They originated and added to the Old Code two clauses in Art. 1014, the last of which declares: 'If, on the contrary, the heir has only refused to accept, (*i. e.* has neglected to avail himself of the right of choice,) and has not renounced, he can claim the surplus, on accepting the succession, provided his right of acceptance be not prescribed against.' Here is a legislative recognition of the existence of a special plea of prescription against the right of acceptance. Where is the term to be found, if not in Art. 1023? As we have already said, this cannot be denied. But is it necessary, in order to give effect to Art. 1014, to mutilate Art. 1023? Or, in other words, is the prescription of the faculty of acceptance irreconcilable with that of renunciation? We have, we conceive, shown that it is not. And there is nothing in Art. 1014 which is not entirely consistent with our views. The heir who has simply refused to accept, may claim the surplus on accepting the succession, provided his right of acceptance (if he is one of those against whom the prescription of acceptance runs) be not prescribed against.

II. *Theodore Shields* has tacitly accepted the succession of *Mrs. Zacharie*, by suffering judgment to be given against him, in the capacity of heir, without claiming the benefit of inventory, or renouncing the succession. C. C. 994.

On the 6th July, 1831, *J. T. Pemberton* instituted suit against *Lavania Irwin* and others, on two promissory notes, for the sum of $10,000 each, being the two notes given by *Irwin* to *Pemberton*, when he purchased the plantation from *Pemberton*. *Mrs. Irwin* called the heirs of *Mrs. Zacharie* in warranty, alleging them to be liable for the amount of said notes, on account of her assumption of them, when she purchased the plantation from *Irwin*.

*Pemberton* also instituted suit against the heirs of *Mrs. Zacharie* on these notes, and the two cases were consolidated. In both of these suits the liability of *Theodore Shields* as an heir is alleged both by the plaintiff and his co-defendants, and judgment against him is prayed for, as well as the appointment of a curator *ad hoc.*

On the 16th Nov. 1831, *G. Schmidt, Esq.*, was appointed to represent him, and citation served on him. See record of suit of *Pemberton* v. *Heirs of Irwin and Zacharie.* Judgment was rendered against *Shields* for his portion of the debt.

These suits were on a joint obligation of the heirs of *Mrs. Zacharie. Shields* was a necessary party to them, and was legally in court by the appointment of a curator *ad hoc.* C. C. 2080. *Jelks* v. *Smith*, 5 An. 674; *Dupuy* v. *Hunt*, 2 An. 564. Under the jurisprudence of our State, as it stood at the time these suits were instituted, *Shields* was properly before the court. C. C. 3522, C. P. 116, 120, 964, 195. *George* v. *Fitzgerald*, 12 La. 604; *Zacharie* v. *Blundin*, 4 La. 154; *Copely* v. *B.*, 12 Rob. 79. H.'s D., verbo Absentee, vol. 1, p. 3, No. 21.

The person appointed to represent *Shields* was a sworn attorney, and it is to be presumed that he did his duty, and duly notified *Shields* of the institu-

tions of these suits. *Beaumont* v. *Covington*, 6 R. 189; *Cooley* v. *Seymour*, 9 La. 274.

The proceedings of the court which rendered judgment against *Shields* must, after the lapse of twenty years, be presumed to have been regular. After the lapse of that period, there is a presumption in favor of every tribunal acting within its jurisdiction, and that all persons concerned had due notice of its proceedings. · *Gibson* v. *Jester*, 2 An. 503.; *Gentile* v. *Foley*, 3 An. 146.

III. Prescription was interrupted by the acknowledgment of *Shields's* rights in the succession of *Mrs. Zacharie*, in 1830 and 1831, by the persons who now plead it.

There is nothing in the nature of the prescription set up which takes it out of the general rule laid down in C. C. 3486. It operates like all other prescriptions. While it divests the person against whom it is acquired of a right, it vests that right in some other person.

Thus the faculty of accepting the inheritance, or in other words, the portion which the heir loses by the prescription of thirty years, vests in his co-heirs of the same degree or in those next in degree. C. C. 1015, 1016, 1017. And moreover, a mere stranger, or a person having no interest in the estate, or who cannot be benefited by prescription, cannot plead it. C. C. 3429. Now it is clear, that if the person who is benefited by the plea of prescription, or who has an interest in pleading it, acknowledges the rights of the person whose title he prescribes before the term has accrued, there is an interruption.

Your honors held that the defendants in the opposition, being co-heirs of the opponent, have an interest in setting up the plea. We are to understand, I presume, that it is as co-heirs simply, and not as executors, that they have such an interest. They certainly have an interest as co-heirs, because, if the opponent has lost his rights in the succession, they have acquired them jointly with other heirs who have accepted. But they have no interest as executors, because as executors they can acquire nothing by it, and it is contrary to every principle of law and equity to permit them to set it up for the professed purpose of shielding their conduct from the scrutiny of justice. *Coudtage* v. *Chamberlain*, 4 An. 368. C. C. 3404.

Now this brings us to a question of pleading presented by the record. The exception in which the plea of prescription is set up alleges "that the succession of the said *Widow Zacharie* was never accepted by the said opponent, or by the parties through whom he claims," but it is not alleged that the successions of those persons, through whom he claims, were not accepted by him. In the absence of any denial, it must be conceded that the opponent has accepted their successions. But again, the exception concludes: "Wherefore these appearers, reserving their right to answer more fully to the said opposition, in case this exception is overruled, now pray said exception be sustained and said opposition dismissed," &c.

Now it is clear that they plead this exception in their single capacity of executors. They are before the court in no other capacity, and they have made no attempt to assume any other. They were called upon to account as executors, and as executors they have accounted.

As executors they cannot maintain the exception; it would be *contra bonos mores*, and as co-heirs they do not plead it. The plea of prescription being *stricti juris*, the court can supply nothing. The party wishing to avail himself of it must plead it expressly, and in that capacity in which the law permits him to avail himself of it. If he pleads it in any other, it is the same as if it had not been set up at all. C. C. 3426.

Re-hearing refused.