BREAUX, C. J.
Plaintiffs, alleged owners of property conveyed to three of them by the heirs of Thomas Green Davidson and his first wife, Frances E. George, instituted this action for tracts of land described in their petition. These heirs are Emma E., widow of George Austin, Annie M., wife of Ernest Nicaud, and Frances L., wife of Trezevant. The date of the deed of transfer is November 9, 1898.
Thomas Green Davidson was a well-known citizen of this state, a lawyer in active practice, a member of Congress for many years. He was twice married. His first wife died in the ’60’s. They had five children; one of the number died childless, the other died before his father, leaving a son, who died recently. He was not a party to this suit.
It is averred that Mrs. Austin, Mrs. Trezevant, and Mrs. Nicaud, who transferred their right of inheritance, accepted unconditionally the estate of the mother and under the benefit of inventory the estate of their father.
Nears after the death of his wife, in 1869, Davidson contracted a second marriage with Josephine H. Kille, widow of James P. Elmore. She was the mother of a son, issue of her prior marriage with Elmore. There were two children born of the marriage with Davidson. The only parties who transferred a right of inheritance are the three daughters before named. They accepted the succession of their father. The other children did not join in transferring an asserted inherited right; on the contrary, they oppose plaintiffs’ claim, based entirely on that right transferred as before mentioned.
In a marriage contract between Davidson and the wife of his second marriage, it was provided that there would be no community ■between the husband and wife. This is mentioned only to add that there was only one community concerned; i. e., the community existing between Davidson and his first wife.
Mrs. Josephine Davidson, the widow, still survives her late husband, who died in 1883.
*959 The two tracts claimed by plaintiffs were bought by Davidson, one in 1836, and the other in 1859, and it is claimed by plaintiffs that they each became the property of the first community.
Plaintiffs alleged and urged that Davidson, the father, was absolutely without right to sell the one-half of the community property.
We are informed by the record that there is no record that mortuary proceedings were ever instituted in matter of the estate of the first Mrs. Davidson, and no inventory ever made.
Shortly after the death of Thomas Green Davidson, his estate was opened. His second wife and widow petitioned for the opening of the succession. She did nothing further than merely open the estate.
In 1884 one of the heirs, Mrs. Emma Austin, daughter of the first marriage, applied for the administration. She was appointed administratrix, had an inventory of the property of the estate made, but did not include therein the property now claimed by plaintiffs; she had at least a good portion of the property of the estate sold, but did not for an instant seek to sell the property now in dispute. It does not seem to have been considered as part of the Davidson succession.
The argument of learned counsel at this point is that the fact that Mrs. Emma Austin, the administratrix, did not have the property credited to the estate on the inventory, after she had applied for the administration, should not be prejudicial to her interests; that she was young at the date of her mother’s death, inexperienced, without ability to manage an estate, and ought not to be held responsible for not having the property properly entered on the inventory; and that no presumption should be considered as arising because of her failure to have the property inventoried. None the less, this, failure on her part in having had an inventory made adds force to defendants’ averment that the property was not owned by the estate.
Going back in order to give consideration to the history of the title of March 26, 1875, it is stated by defendants and warrantors that Davidson transferred the property in dispute, at least a part of it, to Dr. George Colmer; that this act of March 26, 1875, was destroyed in the fire which burnt down the courthouse in Livingston parish in the latter part of the year 1875. In an act dated in 1877, reference is made to this sale for the purpose of reinstating the destroyed deed of 1875. Full reference is made to the deed of 1875 in the act of 1877. Copying the words of the act, the following are the recitals of both acts as shown by the declaration in the act of 1877:
“Thomas Green Davidson sold and warranted the title to George Colmer to 1,230 acres of land near Bayou Barbary in Livingston parish, known as the Denham tracts, tracts bought by vendor from the late Levi Spiller.”
It is stated in the deed that George Colmer returned to Davidson his said vendor’s note as part consideration of the conveyance from Davidson to Colmer.
Davidson stipulated that he would have a right to redeem the whole or part of the land at any time during his life.
The foregoing acts were under private signature, signed by two witnesses; to the act of 1877 there is appended a written declaration, signed by the parties and witnesses, in which they declared that the purpose of the act of 1877 was to ratify the act of 1875 and to restore it in full force on the public records of the parish.
Plaintiffs’ contention is that the act was not translative of property; that it was private and never authenticated, an absolute nullity in fact, of not the least importance in any respect.
Defendant excepted to plaintiffs’ action on the ground that plaintiffs had no right of *961 action; on the further ground that plaintiffs and their authors were estopped from attacking the acts of Davidson.
The exception was referred to the merits.
Thereafter an answer was filed pleading a general denial and claiming the ownership of the property.
In the answer defendant denies that Mrs. Austin, Mrs. Trezevant, and Mrs. Nicaud had title to the property claimed by plaintiffs when they passed - the act of transfer on the 10th of November, 1888. In the act of transfer to Sehultze, the plaintiff declared that they conveyed their hereditary rights, •title, and interest in and to the property of the late Mrs. Frances M. George, wife of T. G. Davidson: also all their rights, title, and interest of every kind and description in and to all lands left by their late mother. They transferred all of their property ; Mrs. Nicaud and Mrs. -Trezevant included a clause in the deed reserving all the property in their possession which they had received from their father, the late T. G. Davidson.
In addition, the other heir, Mrs. Emma Austin, sold a number of tracts of land to plaintiffs received by her from the succession of her late father. There is a special declaration that these tracts came from her father’s estate in settlement of her claim inherited from her mother.- The land last referred to — i. e., lands sold by Mrs. Austin to plaintiff — is fully described in the deed to plaintiffs and identified as lands received from Davidson’s succession.
Defendant, the Frost-Johnson Lumber Company, in its answer urged a number of grounds; among them that the heirs just named are estopped from attacking the title to the property, that they are bound by the act of Davidson, "their father, and are bound to defend the sales and dispositions made of the property by him. Defendant further alleged that it -bought the property from C. D. Frost, Johnson, and N. W. McLeoid, with full warranty, and that these parties (just named) bought from James J. Manson about nine years before this suit was instituted.
James J. Manson, at the instance of defendant, was made a party to the suit as warrantor. He alleged in his answer to the call in warranty that he became the owner of the property by purchase from Dr. James P. Elmore and from Mrs. Settoon, who was Kate Colmer Davidson, and Mrs. Marion Wallace Davidson on December 9,1901.
These last-named persons in turn were made warrantors. They answered at some length. The children of the second marriage of T. G. Davidson, also Dr. Elmore, stepson of T. G. Davidson, offspring of the first marriage of Mrs. Davidson with Elmore, denied that plaintiff or his authors in title, Mrs. Austin, Mrs. Trezevant, and Mrs. Nicaud, had any right to the property. They invoked the different acts passed at different times. They pleaded the 5, 10, and 30 years’ prescription.
The heirs just named as warrantors held the property as owners under a donation to them by George Coliner in the deed of donation ; these warrantors urged that the lands donated to them are the Denham tracts of lands, the same claimed by plaintiffs, which he (the donor) acquired from T. G. Davidson on March 25, 1875, and confirmed by an act in 1877, signed to supply document destroyed by fire. This act is in authentic form and fully reinstates prior acts of transfer. It is dated July 30, 1878.
We will state at this time that the act last above mentioned was signed by T. G. Davidson acting for his minor children of his second marriage. These children have fully ratified the act of their father, who signed for them. At all times after their majority they ratified their father’s act.
This act was recorded in the year 1895. It was binding between the parties from the first, and binding as to the third persons, *963 including the plaintiffs, from the time that it was recorded in 1895.
The questions relating to the succession of Thomas Green Davidson will be the first considered for decision.
[1] He was the owner of one-half of the property. His acts, to that extent at least, are binding upon the heirs. As against him, were he living, they could make absolute proof; they are binding upon his heirs. The donation made in act of 1878 subsequently affirmed by authentic deed and acknowledgment, was an onerous donation; on the face of the papers he settled a large indebtedness (nearly $2,000) due by him to the donor Colmer.
One of the objections of plaintiff in argument is that the act contained a right of redemption, and for that reason the act is null. The donation, we have stated, was not gratuitous; it had served to pay a claim which we consider in the light of a sale. Until a tender of this amount, plaintiffs could not exercise the right of redemption, and the act was a complete security for the sum. It is not possible to reinstate the condition to what it was without returning the amount received; for this reason it is now a sale and nothing else.
[2] Another ground is that it was a dation en paiement, and as such null because Colmer did not go into possession. He had the possession conferred by deed binding on Davidson and his heirs. He paid the taxes and exercised dominion over the property. It has since passed into the physical possession of purchasers, who cannot be divested of title after these many years.
The late Mr. Davidson disposed of some of the property of the community existing between him and his first wife; he treated the property as his own; transferred it until it reached the possession of third persons. To all of this these heirs did not object. The estoppel pleaded applies to these heirs.
[3] At this point the contention of plaintiff is that, under the act of 1884, relative to forced heirs, children can successfully question the validity of the transfers of their de cujus. Sufficient to state, the act of 1884 does not have a retroactive effect. This act does not relate to the remedy, and is not of such a nature as would enable the court to interpret it as applying to prior acts. Third persons cannot be divested of their property in that way. This court said substantially in Westmore v. Harz, 111 La. 311, 35 South. 578, that the right acquired was of a date long anterior to the act of 1884, and that it could not be divested by subsequent legislation. See, also, Jones v. Jones, 119 La. 679, 44 South. 429.
This in the main brings our views to a close regarding the succession of Thomas Green Davidson.
We will now take up the succession of the late Mrs. Thomas Green Davidson.
[4, 5] As relates to the succession of the first Mrs. Davidson, who died in the early Ws, there was very little, if anything, done toward its settlement; no inventory was made; and no one sought to administer the affairs of the estate for the benefit of the minors, issue of the first marriage. The husband continued in possession as usufructuary. He seems to have had absolute control, and nothing shows the least objection urged on the part of his children of the first marriage. It was only after the second marriage in 1869 that these children began to give themselves some concern in matter of their interest in the succession of their late mother; at that date they were all of age (Mrs. Nicaud was about 23, Mrs. Austin, 25, and Mrs. Trezevant, 30), and were entitled to a settlement, and the testimony is that a settlement was made. They employed as their attorney Mr. G. T. W. Ellis, at present judge of the civil district court for the parish of Orleans, who was at that time practicing law. *965 He took steps toward obtaining a settlement. Time passed, and these heirs informed him that a settlement had been effected with their father, and that his services would not be needed further. Judge Ellis testified in the case, and, while he does not recall details after these many years, he stated that he knows that the late Mr. Davidson made a settlement with his daughters of their entire interest in their mother’s succession, including the community.
An old colored servant testified to a limited extent in regard to this settlement.
[6] Although the testimony is not as full and complete as it might be to prove that they had been settled with with an absolute certainty, in view of the destruction of the papers, the many years that have elapsed, the different pleas of prescription interposed, we have not found it possible to arrive at the conclusion that they can now recover from their mother’s estate. The youngest heir to whom the father transferred tracts of land in satisfaction of her claims against her mother’s estate acknowledged that it was in full settlement of her claim. The recital of the deed is proof positive of the settlement. She was absolutely concluded by the declaration which she signed. This was over 30 years ago. It is not possible at this late date, to the end of setting aside this settlement, to hold that it is not legal because not preceded by an account supported by vouchers handed to her 10 days before the settlement. It is too late now to consider that plea. This conclusively puts an end to all question in regard to the half of the estate which had been owned by the first Mrs. Davidson, and in regard to the interest of one of the heirs who claimed a fractional portion of the undivided half by inheritance from the mother.
As to these last-named heirs (Mrs. Austin and Mrs. Trezevant), they also are concluded, although the evidence is not as direct as to them.
We have noted that the property had passed from Davidson to his friend and neighbor, Dr. Colmer; it had been property of the community disposed of over 30 years ago. These last-named heirs also received lands from the estate of their father, and thereafter acquiesced in that which had been done over 30 years ago. In addition, these heirs never accepted the succession of their mother except by the effect of the declaration made by them in the act of transfer to plaintiff.
This court held, in the Succession of Waters, 12 La. Ann. 97, that the heir who has permitted 30 years to elapse without having done any act showing the intention to accept the succession is barred by prescription from any rights as heir.
There is no evidence showing that Davidson kept possession of the property or any evidence showing that these heirs, in assuming to transfer their asserted inheritance, transferred the lands to defendant. They only transferred their asserted right to succession and did not in the transfer allude ever to any particular land; lands must be' described or identified in some way at least in transferring them.
There are other points of minor importance. We have considered them all, and, after considerable deliberation, have arrived at the conclusion that these have been settled with, and, if not settled with, that their claim is barred by prescription.
It is therefore ordered, adjudged, and decreed that the judgment appealed from is affirmed.