(79 South. 413)

No. 22789.

GENERES v. BOWIE LUMBER CO.

(April 11, 1918.  On Application for Rehearing, June 29, 1918.)

*(Syllabus by the Court.)*

1. DESCENT AND DISTRIBUTION ☞72 — SUCCESSION—ACCEPTANCE OR RENUNCIATION OF SUCCESSION—CONSTRUCTION OF STATUTE.

Article 1030 of the Civil Code, declaring that the faculty of accepting or renouncing a succession becomes barred by the lapse of time required for the longest prescription of the rights to immovables, means that one right or the other, either the right to accept or the right to renounce, whichever right or faculty the heir should have exercised before the lapse of 30 years, is prescribed at the end of the 30 years.

2. DESCENT AND DISTRIBUTION ☞72 — SUCCESSION—ACCEPTANCE OR RENUNCIATION OF SUCCESSION—CONSTRUCTION OF STATUTE.

Article 1030 of the Civil Code does not mean that both faculties, that of accepting and that of renouncing a succession, become prescribed simultaneously, as to one and the same heir; for that is impossible. It is only the faculty which the heir has a right to exercise and an interest in exercising, before the lapse of 30 years, that becomes prescribed by the lapse of 30 years.

3. DESCENT AND DISTRIBUTION ☞72, 119(2)— SUCCESSION—ACCEPTANCE OF RENUNCIATION OF SUCCESSION—PRESCRIPTION.

If it be the faculty of accepting the succession that the heir has to exercise, in order to avail himself of his rights as an heir, it must be exercised within 30 years, or the faculty will become prescribed. If it be the faculty of renouncing the succession that the heir has to exercise, to avoid the obligations of the deceased, that faculty must be exercised within the 30 years, or it will become prescribed.

4. DESCENT AND DISTRIBUTION ☞72 — SUCCESSION — HEIRSHIP — PRESCRIPTION — STATUTE.

By the prescription of 30 years, established by article 1030 of the Civil Code, the status of the heir or relation to the deceased person is irrevocably fixed, as either that of an heir or that of a stranger, according to what the status was at the moment before and when the 30 years expired.

5. DESCENT AND DISTRIBUTION ☞72 — SUCCESSION — ACCEPTANCE OF SUCCESSION — RIGHT OF RENUNCIATION.

An heir who has not formally accepted the succession, nor committed an act that has made him liable as an heir, may exercise either faculty—that of accepting or that of renouncing the succession—at any time within 30 years. Even an heir who has renounced may yet accept the succession, at any time within 30 years, provided it has not been accepted by other heirs, and provided rights acquired by third persons either by prescription or by lawful dealings with the succession representative shall not be prejudiced.

6. DESCENT AND DISTRIBUTION ☞72 — SUCCESSION — RENUNCIATION OF SUCCESSION — PRESCRIPTION.

With regard to forced heir, in whom the law vests seisin of the estate or the right of possession without his having to accept the succession, it is only one who has renounced who stands to lose by prescription the right to accept; and it is only one who has not renounced who can lose by prescription his right to renounce.

7. DESCENT AND DISTRIBUTION ⊘➞72 — SUC-
CESSION — FORCED HEIRSHIP — ACCEPTANCE
—PRESCRIPTION.

A forced heir, particularly one who was a
minor child when the succession was opened,
who has never renounced the succession, does
not lose by prescription his right of inheritance,
by failing to accept the succession within 30
years, because, if he has not renounced the suc-
cession, he is presumed to have accepted it, and
the only faculty that he has to lose by prescrip-
tion is the faculty of renouncing.

8. LIMITATION OF ACTIONS ⊘➞12(1) — PRE-
SCRIPTION — STATUTE OF REPOSE — PUR-
POSE.

Statutes of repose, by which titles are con-
firmed, are enacted for the benefit of those only
who have a primordial or voidable title, not for
the benefit of trespassers or possessors without
even a voidable title.

9. LIMITATION OF ACTIONS ⊘➞12(1) — PRE-
SCRIPTION—TRESPASSER—STATUTE.

The prescription of 30 years referred to in
article 3548 of the Civil Code does not defeat a
petitory action instituted by the owner against
a trespasser or possessor without as much as a
voidable title and without 30 years' possession.

*(Additional Syllabus by Editorial Staff.)*

10. PLEADING ⊘➞112—PLEA OF PRESCRIPTION
—EFFECT AS ANSWER.

Although it would have been expeditious to
have referred the plea of prescription to the mer-
its of the case, or to have tried it with the
merits, it was not an error to refuse to consider
the plea as an answer to the suit.

Monroe, C. J., dissenting.

Appeal from Twentieth District Court,
Parish of Lafourche; William E. Howell,
Judge.

Petitory action, coupled with an action in
damages for trespass, by George A. Generes
against the Bowie Lumber Company. Judg-
ment maintaining defendant's plea of pre-
scription in part and overruling it in part,
and plaintiff appeals. Judgment annulled,
and case remanded for trial on the merits.

W. B. Le Bourgeois, of New Orleans, for
appellant. Caillouet & Caillouet, of Thibo-
daux, for appellee.

O'NIELL, J. This is a petitory action to
recover two tracts of swamp land in the de-
fendant's possession. The plaintiff claims
also $47,100.56, alleged to be the value of
forest timber taken from the lands by the
defendant. The lands are described as the
N. ½ of N. W. ¼ of section 4, and all of that
portion except the N. E. ¼ of N. E. ¼ of
section 6 that lies on the north side of Bayou
Chevruil, in T. 14 S., R. 18 E., in the South-
eastern district of Louisiana, west of the
Mississippi river.

The plaintiff claims title by inheritance
from his parents, Louis F. Generes and Mrs.
Josephine Abat Generes, his coheirs (collat-
eral relations) having renounced and succes-
sion of their deceased parents, and he hav-
ing been recognized as the sole heir of his
father by a judgment of the civil district
court for the parish of Orleans.

He alleged that the lands were acquired
by Louis F. Generes by purchase from the
state of Louisiana, the land in section 4 by
patent No. 2187, and that in section 6 by
patent No. 2188, both dated the 13th of De-
cember, 1875.

The plaintiff alleged that the defendant
had no title whatever to the land in section
4; that the defendant claimed the land in
section 6 by virtue of a deed from the Acme
Land & Timber Company, dated the 12th of
November, 1908; but that the Acme Land &
Timber Company had had no title whatever,
and had made the sale without warranty and
for an inadequate price. The plaintiff al-
leged that the sale was therefore absolutely
null, and that the defendant was a mere
trespasser on both tracts of land.

After certain dilatory exceptions, which
we need not consider, had been filed and dis-
posed of, the defendant filed a plea of pre-
scription of 30 years, based upon articles
1030 and 3548 of the Civil Code. The plain-
tiff obtained a rule on the defendant to show
cause why the plea of prescription should
not be considered an answer to the suit.

The rule was tried and dismissed, and the
plea of prescription was tried and disposed
of as such.

The evidence adduced on the trial of the plea of prescription disclosed that the plaintiff's father, Louis F. Generes, died in Havre, France, on the 28th of October, 1875; that his succession was opened and his will probated in New Orleans, his last domicile, in that year. The inventory of the estate, made in November, 1875, did not mention the lands involved in this suit, probably because the patents had not then been issued. It appears that the widow, Mrs. Josephine Abat Generes, mother of the plaintiff, was present at the making of the inventory, in her capacity of widow in community and tutrix of her minor children, and signed the procès verbal of the notary public. The plaintiff was then a minor, having been born on the 22d of September, 1856. Two of the daughters of Louis F. Generes renounced his succession on the 30th of November, 1875. All other heirs, except the plaintiff, renounced the succession in 1916. The final account of the administrator was filed on the 2d of July, 1885.

On the petition of the plaintiff, filed in March, 1916, an ex parte judgment was rendered by the civil district court for the parish of Orleans on the 4th of May, 1916, recognizing the plaintiff to be the sole heir of Louis F. Generes.

The plaintiff's mother died intestate on the 6th of October, 1905.

This suit was filed in August, 1916, four months after the plaintiff was informed that the defendant had cut the timber from the land. No evidence was offered to show the nature or duration of the defendant's possession of the property. The district judge assumed, from the character of the suit, that the defendant had been in possession of the land longer than a year. He sustained the plea of prescription against the plaintiff's right to recover property of the estate of his father, and overruled the plea as to the plaintiff's right of action as the heir of his mother, the widow in community of Louis F. Generes.

The plaintiff prosecutes this appeal. The defendant, answering the appeal, contends that the land in dispute belonged to the separate estate of the plaintiff's father, and prays that the judgment appealed from be amended so as to maintain that the plea of prescription bars the plaintiff's right of action for any part of the land sued for.

### Opinion.

[10] Although it would have been expeditious to have referred the plea of prescription to the merits of the case, or to have tried it with the merits, it was not an error to refuse to consider the plea as an answer to the suit.

[1, 2] The essential fact upon which the district court maintained the plea of prescription, under articles 1030 and 3548 of the Civil Code, is that 30 years had elapsed from the date the plaintiff became of age when he formally accepted the succession of his father and asserted title to the property in contest.

Article 1030 of the Code declares:

"The faculty of accepting or renouncing a succession becomes barred by the lapse of time required for the longest prescription of the rights to immovables."

Article 3548 provides:

"All actions for immovable property, or for an entire estate, as a succession, are prescribed by thirty years."

The judgment rendered in this case is based mainly upon the decision rendered in the Succession of Waters, 12 La. Ann. 97, where our predecessors interpreted the expression in article 1030 of the Code "the faculty of accepting or renouncing" to mean, not either the right to accept or the right to renounce, nor the privilege or choice of either accepting or renouncing, but the right of accepting *and* the right of renouncing.

It was virtually conceded in the two opinions rendered in the case cited that the interpretation adopted by the court destroyed the effect of that part of the article (1023 of

the Code of 1825) providing for the prescription of the right or faculty of renouncing. The Chief Justice, speaking for the court, said it was not then found necessary to put a construction upon that part of the article, and that it would be in time to consider the difficulties presented by it whenever a case might arise in which an explanation, if possible, would be required. An explanation of the provision for the prescription of the right or faculty of renouncing was then utterly impossible, because in its interpretation the court had suppressed that part of the article completely.

Mr. Justice Spofford, in his concurring opinion in the case cited, recognized, or manifested, that the court was giving effect to cne half and suppressing the other half of the law to be interpreted. He said, apologetically, that the rule that some effect should be given to all of the words of the law was qualified by the condition that it be possible, and that, if the lawgivers had nodded, or added idle words to their statutes, it was no more than the great masters of wisdom in all departments of letters had done before them. He added that he thought the Legislature of Louisiana had intended, by the article in question, merely to fix a term of prescription against the right of acceptance, and to intimate the consequence of its lapse without an acceptance. He said that that consequence, he thought, was that the successible became a stranger to the succession.

If the framers of article 1030 of the Code intended its meaning and effect to be that at the end of 30 years of silence the heir should become a stranger to the succession, the provision for the prescription against the right to renounce might as well have been omitted. There is unmistakable evidence, however, in the Code itself, that the lawgivers were not nodding, or adding idle words to article 1030 of the Code, when they declared that the faculty of renouncing a succession should be barred by the prescription of 30 years.

Article 1030 is a literal translation of article 789 of the Code Napoléon, viz.:

"La faculté d' accepter ou de répudier une succession se prescrit par le laps de temps requis pour la prescription la plus longue des droits immobiliers."

The proof we refer to, that the provision for the prescription of the right of an heir to renounce a succession was not inserted inadvertently in article 789 of the French Code, nor copied carelessly by the compilers of our own Code, is that, when they copied article 790 of the French Code, in the adoption of article 1024 of the Louisiana Code (article 1031 of the Revision of 1870) they added this paragraph, viz.:

"In like manner, so long as the prescription of renunciation is not determined, the heir may still renounce, provided he has done no act to make himself liable as heir."

The framers of the Code therefore expressed as plainly as language could express their understanding and intention that article 1030 provided for the prescription of the right or faculty of renouncing, as well as of accepting, a succession.

It is as plainly demonstrated by other provisions of the Code on the subject of acceptance and renunciation of successions that the Legislature did not intend that the words "or renouncing," in article 1030, should be disregarded, as they were in the Succession of Waters. If those words mean anything, they mean that, under some circumstances, it is the right or faculty of renouncing a succession that becomes prescribed by 30 years of silence, although, under other circumstances, depending upon the status of the heir, it is the right or faculty of accepting that becomes prescribed by 30 years of silence. If it were true that any heir, whatever his status might be, should become a stranger to· the succession at the

end of 30 years of acquiescence on his part, there would be no meaning whatever in saying that his right to renounce is then prescribed; for, when an heir has become a stranger to the succession, he has the advantage and is in the position of one who has renounced; and it would be absurd to say that his right to renounce is then prescribed.

We find many provisions that were inserted in the Code of 1825 and retained in the Revision of 1870 that were not in the Code or Digest of 1808, nor in the Code Napoléon, that would have no meaning whatever if it were not true that, under some circumstances, it is the faculty or right of renouncing that becomes prescribed by 30 years of silence, although, under other circumstances, it is the faculty or right of accepting that becomes prescribed by 30 years of silence. For example, article 1014 (1007 of the Code of 1825) declares that he who is called to the succession, being seized thereof in right, is considered the heir as long as he does not manifest the will to divest himself of that right by renouncing the succession. Article 1015 (1008) declares that the renunciation of a succession is never presumed, but must be made expressly by notarial act. Article 1018 (1011) declares that renunciation is the same as an alienation of the succession, and that therefore an heir cannot renounce unless he be capable of alienating. Hence the next following two articles declare that a married woman, as heir, cannot renounce the succession without being authorized by her husband, or, on his refusal, by the judge, and that an agent or attorney in fact cannot renounce for an heir, without being specially authorized to that effect.

All of that new matter in the Code of 1825 retained in the Revision of 1870 is a recognition of the necessity for a forced heir to renounce a succession in order to relieve himself of its obligations. The right to renounce a succession was therefore regarded with as much importance as the right to accept, in the adoption of the Code of 1825. The prescription against the right of renouncing would be a matter of no importance whatever, and it might as well have been omitted from article 1030 of the Code, if it were true that any heir, of any status and under any and all circumstances, should become a stranger to the succession by his silence and inaction for 30 years.

We think, too, that the original matter in article 1031 of the Code, translated literally from article 790 of the French Code, made it quite plain that the compilers of both Codes understood and intended that the right or faculty of renouncing a succession should be prescribed by 30 years' silence on the part of an heir, and that the words, "ou de répudier," "or [of] renouncing," were not, as our predecessors on this bench thought, mere idle words. The first paragraph of article 1031, translated from the French text, provides:

"So long as the prescription of the right of accepting is not acquired against the heirs who have renounced, they have the faculty still to accept the succession, if it has not been accepted by other heirs, without prejudice, however, to rights which may have been acquired by third persons * * * either by prescription, or by lawful acts done with the administrator or curator of the vacant estate."

Mr. Justice Spofford, in the opinion he delivered in the Succession of Waters, acknowledged that the provision of article 790 of the French Code quoted above was as plain a recognition of the existence in that Code of a special prescription against the right of acceptance as was manifested by the framers of our own Code when they added to the old Code, in adopting article 1014 of the Code of 1825 (retained in article 1021 of the revision of 1870) this paragraph, viz.:

"If, on the contrary, the heir has only refused to accept and has not renounced, he can claim the surplus, on accepting the succession, provided his right of acceptance be not prescribed against."

The ruling in the Succession of Waters was largely based upon the additional paragraph (last quoted) in article 1014 of the Code of 1825 (R. C. C. art. 1021). It was conceded, though, that as strong an argument in support of the interpretation given to article 1030 by the court might have been based upon article 790 of the French Code; and the opinion of Marcodé contrary to that of the court was therefore criticized.

Our own interpretation of article 1030 of the Code is that what prescribes at the end of 30 years is, not both the right of an heir to accept and at the same time his right to renounce a succession, for that is impossible, but the right to accept or the right to renounce, as the case may be, depending upon whether the heir be one who was required to accept or one who was required to renounce within the 30 years. That construction accords with the cardinal rule of giving effect to every word in the law; it is in accord with the exact language of the article, and is consonant with every other provision of the Code on that subject.

[3-5] The plain language is that the faculty of accepting *or* of renouncing—not *and* of renouncing—becomes barred by prescription. If it be the faculty of accepting that the heir has to exercise, in order to avail himself of his rights as an heir, it must be exercised within 30 years, or the faculty will become prescribed. If it be the faculty of renouncing that the heir has to exercise to avoid the obligations of the succession, it must be exercised within the 30 years, or that faculty will become prescribed; for at any time within the 30 years an heir who has not formally accepted the succession may exercise either faculty—that of accepting or that of renouncing. In fact, according to article 1031, even the heir who has renounced may yet accept the succession at any time within the 30 years, if it has not been accepted by other heirs, and provided it shall not prejudice the rights acquired by other persons, either by prescription or by lawful dealings with the succession representative. And, in like manner, one whose quality of heir is acquired by the mere operation of law and without having to take proceedings or even to express an intention to accept may yet renounce the succession at any time within the 30 years, provided he has not committed any act that would make him liable as an heir. At the expiration of the 30 years the status of the person or relation is irrevocably fixed by the prescription established by article 1030 of the Code, either as an heir or not an heir, depending upon what his status was before the 30 years ended. To illustrate: If he was a forced heir, or if he was a legal heir, and there was no forced heir nor universal legatee, he is presumed, if he has not renounced the succession, irrevocably to have accepted it at the end of 30 years; for his right or faculty of renouncing is then prescribed. On the other hand, if he was an irregular heir, he is presumed, if he has not formally accepted or been put into possession of the estate, irrevocably to have renounced it at the end of 30 years; for his right or faculty of accepting is then prescribed.

It must be borne in mind that the legal heir succeeds to the inheritance at the instant of the death of the person from whom he inherits. R. C. 940. The acquisition by the legal heir takes place by operation of law, without his having to take steps to gain possession of the estate, or express his willingness to accept the succession. Children, insane persons, and those who are ignorant of the death of the person from whom they inherit are vested with seizin, as a matter of right, though not seized in fact. R. C. C. 941. The right which the deceased had of possession of his estate continues in the legal heir, as if there had been no inter-

ruption, because the legal heir is considered seized of the succession from the instant of the death of the person from whom he inherits. R. C. C. 942. By seizin is meant. not possession in fact, but the right of possession, of the property of the succession. R. C. C. 941.

[6, 7] How can it be said then, that a forced heir, who is invested with the right of possession of the property of the succession by operation of law and without having to accept the succession, loses "the faculty of accepting" by the prescription of 30 years?

The interpretation of Marcodé, which the court rejected in the Succession of Waters, was that it was the hereditary right itself, that is, the heir's right or faculty of choosing whether to accept or to renounce the succession. that was prescribed by article 789 of the French Code.

Fuzier-Herman, vol. 2, p. 90, expresses the same opinion. He says that it follows clearly from article 789 that the heir has 30 years in which to choose, and that the presumptive heirs who might be called in his default have no way of forcing him to act, unless it be by putting themselves in possession of the property. He says that the doubt as to what is the effect of the prescription has given rise to one of the most important discussions of the scientists, and that those discussions have suggested as many as eight different theories. He declares that by the eighth theory, or system, the jurisprudence has gradually departed from the other seven diverse rulings, and has become fixed upon one that is closer to the text of the article; that is. that what is prescribed after 30 years is the hereditary right of choice between acceptance and renunciation.

In one sense it is correct to say that what is prescribed is the right of the heir to elect whether to accept or renounce the succession.

because during the 30 years the legal heir may either accept or renounce the succession, and even though he has renounced, he may yet accept it, provided it has not been accepted by other heirs, and provided third parties have not acquired rights on the estate by prescription or by lawful dealings with the succession representative. But the idea is expressed more clearly by saying, in the precise language of article 1030, that it is either the faculty of accepting or the faculty of renouncing that is prescribed after 30 years. If the legal heir has renounced the succession, it is the right yet to accept that is prescribed after 30 years; if he has not renounced, it is the right to renounce that is prescribed after 30 years.

The paragraph that was added to article 790 of the French Code, in adopting it as article 1024 of the Code of 1825 (article 1031 of the Revision of 1870), makes it very plain that, with regard to forced heirs, it is only one who has renounced who can lose by prescription the right to accept, and it is only one who has not renounced who can lose by prescription the right to renounce; for it is to be noted that, according to article 1031, the heir who has formally accepted the succession, or has committed any act that has rendered him liable as an heir, has thereby fixed his status irrevocably. He has then no right to renounce, and, since he has already accepted the succession, he is expressly exempted from the operation of the prescription mentioned in article 1030, as to either the faculty of accepting or the faculty of renouncing. But the legal heir who has not renounced the succession, and in whom the law has vested seizin of the estate without requiring an acceptance on his part, has no other right or faculty to lose by prescription than the right or faculty of renouncing; and the heir who has renounced has no other right or faculty to lose by prescription than the right or faculty of accepting. Hence, as to a forced

heir, depending upon whether he has or has not renounced, "the faculty of accepting or [of] renouncing a succession becomes barred by the lapse of time required for the longest prescription of the rights to immovables."

It is said by the learned judge of the district court that the decision rendered in the Succession of Waters has been approved twice, referring to the case of Terry v. Heisen, 115 La. 1083, 40 South. 461, and that of Schultze v. Frost-Johnson Lumber Co.. 131 La. 966, 60 South. 629. The citation of the former decision, however, in the later cases cited, was not made with approval of the interpretation of article 1030 of the Civil Code, nor with any reference to the question now under consideration. In Terry v. Heisen, the court was construing article 233 of the Constitution of 1898, establishing the prescription of three years against a suit to annul a tax sale; and the reference to the decision rendered in the Succession of Waters was made merely to show how far the court had gone in recognizing the sovereign power to fix a time within which an action should be exercised or become forever prescribed. In the case of Schultze v. Frost-Johnson Lumber Company the court concluded, before mentioning the Succession of Waters, that the heirs had acquiesced in a sale of the property made by their father. The decision in the Succession of Waters was then stated, only incidentally and without comment. Hence it cannot be said that the construction given to article 1030 of Civil Code in the Succession of Waters has ever been deliberately affirmed. To adhere to that decision now would be to adopt an interpretation that is contrary to the letter of article 1030, and to every other provision of the Civil Code on the same subject. Our deliberate conclusion is that the doctrine of the decision in the Succession of Waters should be overruled, not perpetuated.

The plaintiff in this case was not only a forced heir, being a son, of Louis F. Generes, but was a minor child when his father's succession was opened. It was never necessary for him to accept the succession. The law accepted it for him, with benefit of inventory. In the precise language of article 941 of the Code, he was considered as being seized of the succession; that is, he was vested with the right of possession, though not with possession in fact. He was therefore one of those heirs who had no other right or faculty to be exercised within 30 years or to be lost by the prescription established by article 1030 of the Code, except the right or faculty of renouncing the succession.

Referring now to the prescription mentioned in article 3548 of the Code, it is conceded that the defendant has not had possession of the land long enough to have acquired title by prescription.

The argument of the learned counsel for the defendant is that, because article 3548 of the Code appears in the section treating "Of the Prescription Which Operates a Release from Debt," the article must be regarded merely as a statute of repose, or as establishing a prescription liberandi causa.

Our opinion is that the article is merely an affirmance of article 3499, by which the ownership of immovable property is acquired by 30 years' possession. The doubt about the meaning of article 3548 arises from its position in the Code, being in the section that treats "Of the Prescription Which Operates a Release from Debt." The prescription which operates a release from debt has no application or relation whatever to the acquisition or loss of title to immovable property.

[8] Statutes of repose, by which titles are confirmed or quieted, such as, for example, the prescription of three years against suits to annul tax titles, are enacted only for the benefit of persons holding a primordial title, not for the benefit of trespassers, or persons

holding possession without as much as a voidable title.

The French jurists and commentators now agree that the corresponding (or nearly corresponding) article of the Code Napoléon (article 2262) does not apply to a petitory action, but applies only to an action of nullity. See decision by the Court of Cassation, in Cohn v. Morvan, Journal de Palais, 1907, p. 273. See, also, Laurent, vol. 32, No. 384; Huc, vol. 4, Nos. 245, 434; Aubry & Rau (4th Ed.) vol. 2. pp. 322, 395, and volume 8, p. 429; Baudry-Lacantinerie & Tissier (3d Ed.) Prescription, Nos. 593 and 594.

[9] We cannot adopt the theory of the learned counsel for the defendant that, although the defendant has not acquired title by the prescription of 30 years, and even though the defendant may not have a primordial title, nevertheless the plaintiff has lost his title by prescription. To hold that the prescription of 30 years can defeat a petitory action by the owner to recover his property from a trespasser, or possessor without as much as a voidable title, would completely nullify article 3499 of the Code and the settled jurisprudence holding that actual possession for 30 years is necessary to acquire the ownership of immovable property by the prescription of 30 years.

The judgment appealed from is annulled, and it is ordered that this case be remanded to the district court for trial on its merits. The defendant is to pay the costs of appeal and the costs of trial of the plea of prescription; all other costs to depend upon the final judgment.

MONROE, C. J., dissents.

On Application for Rehearing.

PER CURIAM. Rehearing denied.

See dissenting opinion of LECHE, J., 79 South. 418.