(91 South. 523)

No. 24212.

DEW et al. v. HAMMETT et al.

(April 3, 1922. Rehearing Denied April 27, 1922.)

(Syllabus by Editorial Staff.)

1. **Husband and wife ⊜⇒274(1)—Wife's community interest vests in children equally.**

Upon the death of a woman leaving surviving a husband, two children by her first marriage and one by her second marriage, her community interest in land acquired during the second marriage vested in her three heirs in equal proportions.

2. **Descent and distribution ⊜⇒119(2)—Succession; heir's right of recovery not barred so long as property not acquired by any one else.**

In view of Civ. Code, arts. 940–942, a forced heir has no other right or faculty to lose by prescription under article 1030 than the right or faculty of renouncing, and, so long as the property of the succession has not been acquired by any one else, the right of recovery remains vested in him, and is not so barred.

3. **Tenancy in common ⊜⇒15(10)—Possession of husband of heir purchasing another heir's interest held not adverse to third heir.**

The possession of land by the husband of one of the three heirs of a married woman who purchased the interest of another heir and whose wife became the owner of her father's

interest *held* not under a claim of ownership or adverse to the other heir until within the period of prescription.

**4. Adverse possession ⬤⟾85(1)—Prescription; burden on one claiming prescription to show adverse claim.**

The burden is on him who pleads prescription of 30 years to show that his possession began and continued as owner and adverse to the true owner.

Appeal from First Judicial District Court, Parish of Caddo; E. P. Mills, Judge.

Suit by W. E. Dew and others against Richard Hammett and others. From a judgment for plaintiffs, defendants appeal. Affirmed.

J. G. Palmer, Thigpen & Herold, Barret & Files, Foster, Looney & Wilkinson, and Crain, Benoit & Jackson, all of Shreveport, for appellants.

Otis W. Bullock, of Shreveport, and W. B. Harris, of Memphis, Tenn., for appellees.

By Division C, composed of Justices DAWKINS, ST. PAUL, and THOMPSON.

THOMPSON, J. This suit is to recover two-fifteenths interest in 376½ acres of land situated in the oil fields of Caddo parish. The plaintiffs claim as lineal descendants of Elizabeth Croom, except Dew, who purchased the interest of a coheir of his coplaintiffs. The defendants deny that the land ever belonged to Elizabeth Croom, and they deny also that the plaintiffs are the heirs and representatives of said Elizabeth Croom. They allege that they are owners of the whole property, including the interest claimed by plaintiffs. They further pleaded in the alternative that, if the property ever belonged to Elizabeth Croom, and if plaintiffs are her heirs, then that the said Elizabeth Croom died more than 30 years prior to the filing of this suit, and that her heirs never accepted the succession, nor did they ever perform any act manifesting an intention to accept, and therefore any right of action to recover said estate or their interest therein is barred by article 1030 of the Civil Code; further, that defendants and their authors in title have had the actual, continuous, uninterrupted, peaceable, public possession as owners of the whole of said property for more than 30 years, and have therefore acquired plaintiffs' interest in said property by the prescription of 30 years.

Certain mineral leases had been executed upon said land, and the lessees were made parties defendant to the end that plaintiffs might have an accounting of the revenues derived from oil and gas production.

There was judgment for plaintiffs as prayed for, and defendants have appealed.

Mrs. Elizabeth Croom was twice married, first to G. T. Robertson, and second to Isaac Croom. The land in dispute was acquired during her second marriage. She died in 1866, leaving her husband, Isaac Croom, surviving, and three heirs, Louisiana Croom, issue of her second marriage, and Thomas J. and Anne Maria Robertson, issue of her first marriage. The plaintiffs, except Dew, descend from the daughter of the first marriage.

[1] It can hardly be disputed that, at the death of Elizabeth Croom, her community interest vested at once in her three heirs in equal proportions. The district judge, in a very carefully prepared opinion, found that the plaintiffs were the heirs of Elizabeth Croom, and that the property claimed by them belonged to the community of the second marriage. We note that in a supplemental brief filed by the defendants' counsel since the case was submitted it is contended, with apparent seriousness, that the evidence is wholly insufficient to establish the marriage of Elizabeth Croom to either Isaac Croom or G. T. Robertson, but counsel must have forgotten that in their original brief they specifically and unreservedly admit that the property was acquired by Isaac Croom

while married to Elizabeth Croom, and further that the right of the plaintiffs to inherit from Elizabeth Croom "has not been disproved, and such right therefore must be considered as established by the record." The record justified the admission of counsel.

The defendants all hold, or claim to hold, under titles from J. Harris. Harris married Louisiana Croom, the daughter of Elizabeth Croom by last marriage, some time prior to 1868. The record fails to show any title whatever to Harris from any one having an interest in any part of the land, except the one-sixth interest of Thomas J. Robertson, acquired by deed from him December 16, 1871. Harris and his wife sold to Calvin S. Croom in February, 1879, a five-sixths interest in a certain part of the land. This interest was retroceded by the heirs of Calvin S. Croom in July, 1897, the deed being taken in the name of J. H. Harris and his son-in-law, J. E. Cochran. The same five-sixths interest was conveyed by Harris and Cochran to defendant Hammett in 1904. It clearly appears therefore, and indeed it is not disputed, that J. H. Harris never at any time acquired any title from any one to any part of the land, except the one-sixth interest from Thomas J. Robertson. It is not unlikely that the sale of the five-sixths interest to Croom in 1879 was in reality intended as a sale by Mrs. Harris, as she owned a two-thirds interest at the time, and her husband only a one-sixth. The retrocession by Croom to Harris conveyed no title to him. The pivotal question in the case is that of prescription.

It may be accepted as a fact established by the evidence that neither Anne Maria Robertson nor her heirs, the plaintiffs, ever performed any act evidencing an intention to accept or to renounce the succession of Elizabeth Croom prior to filing this suit, which was more than 30 years after the death of Mrs. Croom.

[2] Article 1030 of the Civil Code declares that the faculty of accepting or renouncing a succession becomes barred by the lapse of time required for the longest prescription of the rights to immovables. And articles 940, 941, and 942, provide that a forced heir succeeds to an inheritance at the moment of the death of his parent and without having to take steps to gain possession of the inheritance. The right of possession which the parent had continues in the legal heir, as if there had been no interruption. In view of the foregoing codal provisions, this court was constrained, in interpreting article 1030, to say, in Generes v. Bowie Lumber Co., 143 La. 811, 79 South. 413:

"How can it be said, then, that a forced heir, who is vested with the right of possession of the property of the succession by operation of law and without having to accept the succession, loses 'the faculty of accepting' by the prescription of 30 years? * * *

"But the legal heir who has not renounced * * * and in whom the law has vested seizin * * * without requiring an acceptance * * * has no other right or faculty to lose by prescription than the right or faculty of renouncing."

[3] So long, then, as the property of a succession to which a forced heir is called by operation of law has not been acquired by any one else in some manner provided by law, the right of recovery remains vested in him. It is an axiom that a party cannot lose his title without at the same time some other party acquiring it. We affirm the ruling in the Generes Case, supra, and the question that an heir has no other right or faculty to lose by prescription under article 1030 of the Code than the right or faculty of renouncing may be considered set at rest. To maintain the prescription of 30 years acquirendi causa, it is conceded that the possession must not only be continuous, peaceable, and uninterrupted, but it must be under a claim as owner. Gerrold v. Barnhart, 128 La. 1099, 55 South. 688; Liles v. Pitts, 145 La. 650, 82 South. 735.

The record does not show that Harris, the

asserted author of defendant's titles, enjoyed such a possession of the land in question, and he could convey no greater right of possession than he had. He lived on a portion of the land and cultivated or caused it to be cultivated for more than 30 years, but his occupancy was not as owner of the whole or of any defined portion thereof. The facts attending his possession at the very beginning and throughout its continuance negative any intention on his part to claim ownership of the whole land or any part of it, except the one-sixth undivided interest. As already stated, Harris married one of the three heirs of Elizabeth Croom prior to 1868. In that year he accepted on behalf of his wife from her father, Isaac Croom, a donation inter vivos to the north half of the land. And in the following year Isaac Crom sold the south half to James D. and W. J. Harris. Isaac Croom, of course, was without legal right to either donate or sell his deceased wife's interest, and there is no one presently claiming under either the donation or sale. It is certain that Harris did not and could not, so far as the record shows, claim under either. The donor reserved the right of possession of the land during the remainder of his life. It is not shown when he died. Mrs. Louisiana Croom Harris became the owner of the father's undivided half interest in the north half of the property, and she was already the owner of one-third of the half interest of her predeceased mother. It is not unfair to assume that Mrs. Harris and her husband were at the time residing on the property with her aged father, and after his death the possession continued the same. In that situation how can it be said that Harris went into possession or that his possession commenced and continued as owner? The possession that he had was with his wife and with the expressed declaration that his wife owned one-half of the north half of the property, and with full knowledge on his part, which must be imputed to him, that

his wife also owned one-third of her mother's half. Harris and his wife lived on the property thereafter until the death of the wife. The possession of Harris was linked with that of his wife, by virtue of her ownership of two-thirds of the land, and he could not during her lifetime change the nature of that possession, and as a matter of fact no such change was ever made, at least not up to 30 years before this suit was filed. The possession of Harris under the circumstances as related could not be termed a possession as owner, and could in no sense be considered a possession adverse to the interest of the plaintiffs any more than it could be said to be hostile to that of his wife.

In several transfers of certain portions of the property, made within 30 years before this suit, Harris acknowledged the outstanding one-sixth interest—in the sale by his wife, joined in by him, to Croom; in the retrocession of the heirs of Croom; and in the sale to Hammett, one of the defendants, in 1904. He never made any claim of ownership of the one-sixth interest until the attempted sale to Hammett in 1907. There is no reason suggested why he should not have included the one-sixth interest in the first deed to Hammett. He would have done so if he had believed himself the owner. In the deed from Thomas J. Robertson, brother of the mother of plaintiffs, made to Harris in 1871, appears the following significant statement to which Harris subscribed:

"His [Robertson's] undivided interest held in common with the balance of the heirs of his deceased mother, Elizabeth Croom, and his stepfather, Isaac Croom."

This was an express recognition on the part of Harris that the heirs held the property in common. Thus by the same token by which Harris acquired the one-sixth interest from Robertson he acknowledged the one-sixth interest in the sister of his vendor.

[4] The burden of proof is on him who pleads prescription of 30 years to show that

his possession began and continued as owner and adverse to the true owner. Our conclusion is that the evidence fails in this respect.

Counsel have cited and discussed at length a line of authorities to the effect that, where one co-owner has possessed the entire property separately for 30 years, he may successfully oppose any claim of ownership by his co-owner. The authorities have no application to the facts of this case. Harris was not a coheir, and his possession was not of the whole or of any defined portion of the property. His possession was not separate from that of his wife.

Counsel also refer to authorities to the effect that active physical possession of a part of a tract of land with title to the whole, and the intention to possess the whole constitutes full possession. The mere statement of the proposition furnishes its own answer. Harris had no title to the whole, and his title of one-sixth undivided interest, in view of the ownership and possession of the greater interest by his wife, could in no sense be a possession of the whole. To hold that Harris could prescribe for the whole land under his deed to only a one-sixth interest and defeat the rights of the plaintiffs would be to say that by the same ownership and possession he acquired the interest of his wife.

For the reasons assigned, the judgment appealed from is affirmed at appellants' cost.

Rehearing refused by Division A, composed of Chief Justice PROVOSTY and Justices OVERTON and LECHE.