This is a petitory action for the recovery of real estate which belonged to the succession of Edward Cunningham, deceased, but which had been sold by persons claiming to be the sole heirs and legatee. *Page 792 
The petition alleges that plaintiff's mother was duly and legally adopted by Edward Cunningham and his wife, Eloise Leger, by notarial act passed before Julien Michel, a notary public, during the month of March, 1877, under the authority of a judgment of the second district court of the parish of Orleans, rendered and signed March 22, 1877, in No. 39344 of the docket of that court; that thereafter his mother resided in the house of her parents, by adoption, as their child; that she was reared and treated by them as such and was married from their residence; that his mother was married but once; that he is the sole surviving issue of that marriage: that his mother died September 7, 1890; that Eloise Leger, wife of Edward Cunningham, died intestate November 30, 1893, leaving no descendants other than petitioner; that on April 5, 1895, Edward Cunningham and Julia Elizabeth Grace entered into a marriage contract by notarial act passed before W.H. Seymour, notary, in which the contracting parties renounced the community of acquêts and gains and reserved to themselves the possession and management of their separate estates; that Julia Elizabeth Grace had no paraphernal funds or property when the said contract was executed and did not thereafter acquire either; that Edward Cunningham and Julia Elizabeth Grace were married April 18, 1895; that on April 14, 1898, Julia Elizabeth Grace, wife of Edward Cunningham, purchased, with money belonging to her husband, two lots of ground, with the improvements thereon, and the rights, ways, privileges, etc., thereto belonging, situated in the Sixth district of New Orleans in square No. 396, bounded by Pitt, Atlanta, Dufossat and Valmont streets, designated as lots Nos. 12 and 13, each measuring 32 feet 5 inches front on Dufossat street by a depth between parallel lines of 120 feet; that subsequently a decree of separation from bed and board was rendered between Julia Elizabeth Grace Cunningham and Edward Cunningham, which *Page 793 
was followed by a final decree of divorce; that, pending the decree of divorce, Edward Cunningham and Julia Elizabeth Grace executed a contract of settlement in which Julia Elizabeth Grace renounced any and all rights she had or may have had in and to the said two lots Nos. 12 and 13 in square 396, Sixth district of New Orleans; that Edward Cunningham died, possessed of said property, on June 27, 1915; that his succession was opened by collateral relations, who contested among themselves the right to the administration of the estate; that, pending the appointment of an administrator, Julia Elizabeth Grace filed a petition alleging that deceased left a last will and testament in which she was named his universal legatee, and prayed for the probate thereof; that this will was probated, but it was attacked by the collateral relations; that, before the issues thus raised were adjudged, the court upon the joint application of Julia Grace Cunningham and one of the collateral relations of Edward Cunningham, deceased, appointed executors to administer the estate, and later, by agreement between all of the litigants, the property was sold, and the executors took possession of the proceeds thereof; that by subsequent transfers of this property the ostensible title to it became vested in the defendant, Mrs. Iska Brown, who, together with her husband, are in the actual physical possession of it and are holding it under a claim of full ownership thereof; that petitioner is the lawful owner of an undivided one-third interest in said property, as the forced heir of Edward Cunningham, deceased, and that petitioner's interest therein has never been divested.
To these pleadings defendant filed exceptions of no right or cause of action and later answered the suit. The answer is a denial of every allegation in the petition except that defendant is in possession of the property under a claim of full ownership thereof. Defendant alleges that she acquired the property *Page 794 
with warranty from the New Orleans Homestead Association, who, likewise and on the same day, had acquired it from Dr. P.B. Salatich, and she calls Dr. Salatich in warranty, and prays for such judgment against him as might be rendered against her.
Warrantor answered the call in warranty; reserved to himself all exceptions and defenses pleaded by defendant; adopted defendant's answer as part of his answer; alleged his claim of title from the Eureka Homestead Society, through Mrs. Loretta Johnson, Miss Gladys C. Malter, and Dr. John R. Adams, his vendor; annexed as part of his answer the proceedings had in the succession of Edward Cunningham, deceased, and the judgment of this court therein, reported in 77 So. 506, 142 La. 702; alleged that, by reason of laches, plaintiff is estopped from the assertion of an interest in or a right to any part of the estate of Edward Cunningham, deceased; and he calls in warranty Mrs. Loretta Johnson, wife of Joseph Hellen and Joseph Hellen, Mrs. Elizabeth Grace, divorced wife of Edward Cunningham, John Louis Cunningham, Mrs. Mary Kehoe, widow of Edward Foley, and Mrs. Mary Cunningham, widow of Thomas Houston and now wife of William F. Brooks, and he prays for such judgment against said warrantors as may be rendered against him.
After answering as warrantor, P.B. Salatich filed a plea of prescription based upon the ground that suits for the reduction of excessive donations are prescribed by the lapse of five years.
The defendant filed a similar plea, but rested it upon the allegation that the suit was filed more than five years after plaintiff attained his majority.
The trial judge reserved his ruling on the pleas, heard the case on the merits, and thereafter sustained both pleas of prescription and dismissed the suit at plaintiff's cost. From this judgment plaintiff appealed. Defendant *Page 795 
has answered the appeal, and prays for the affirmance of the judgment or for such judgment against her warrantor as may be rendered against her. It does not appear from the minutes that the exceptions filed by defendant and the estoppel pleaded in the answer of Dr. P.B. Salatich, warrantor, were passed upon in the lower court. The extracts from the minutes merely show that the exceptions were heard and submitted on Tuesday, November 15, 1921; the plea of prescription was heard and submitted June 29, 1923, and the judgment was signed in open court July 30, 1923.
There is no reference to the exceptions in either brief. We will therefore dismiss them from consideration with the statement that the averments of the petition allege a right and cause of action.
Defendant and warrantor rely upon their pleas of prescription, and the correctness of the lower court's ruling on those pleas is the only issue of importance in the case, because the record discloses that the averments in plaintiff's petition of his heirship and interest in the succession are established by abundant proof. Neither defendant nor warrantor challenges this proof; therefore it is not necessary to review it.
Plaintiff as the sole forced heir of his grandfather by adoption, Edward Cunningham, deceased, was, at the death of his grandfather, immediately seized of an undivided one-third interest in the estate.
 "A succession is acquired by the legal heir, who is called by law to the inheritance, immediately after the death of the deceased person to whom he succeeds. * * *" Civil Code, art. 940; Schreiber v. Beer, 91 So. 149,150 La. 676; Cox v. Von Ahlefeldt, 23 So. 959, 50 La. Ann. 1266.
With respect to universal legatees it is held that:
 "Under the maxim, `Le mort saisit le vif,' embodied in articles * * * 942 of the Civil Code, the universal legatee is, in the absence of forced heirs, invested with the ownership and *Page 796 
seizin of the universal legacy from the moment of the death of the testator. * * *" Tulane University v. Assessors, 40 So. 446, 115 La. 1025.
Plaintiff did not divest himself of the interest he inherited in his grandfather's succession; in fact, he did not know that he was the grandson of deceased, by adoption, and his forced heir, until August, 1921. Shortly after the death of Edward Cunningham, a sister of the deceased opened the succession by applying for the administration thereof. A brother of the deceased opposed this application. The universal legatee then presented the last will and testament of deceased, and prayed that it be probated. The probate followed and the court ordered the execution of the will. The collateral relations of the deceased attacked this order and the validity vel non of this will, and thereafter, on the joint application of the universal legatee and John L. Cunningham, a brother of the deceased, the court appointed these two persons executors, and the property of the succession passed to and remained in the possession of the executors until it was sold on March 9, 1917, by a notarial act, in which the universal legatee and all of the collateral relations of the deceased who had appeared in the succession proceedings joined.
The litigation growing out of the attack upon the validity of the will of the deceased was terminated by the judgment of this court rendered January 3, 1918. It was only then that the universal legatee was finally recognized as such and in that capacity was sent into possession of the estate. It is our opinion that the prescription of an action for the reduction of an excessive donation like the prescription acquirendi causa begins to run at the commencement of possession adverse to the owner. There are decisions of this court that the prescription mentioned begins to run at the date the will is probated and executed. As we read the law and the authorities, if there are no forced heirs the universal *Page 797 
legatee is seized of the succession immediately upon the death of the testator, but if there be forced heirs the will must be probated and executed before prescription begins to run against the action by the forced heir for his legitime and the execution of the will is a putting in possession. This is true, because until that is done the universal legatee is not invested with the ownership and seizin of the estate if there be a forced heir or a legal heir who is called by law to the inheritance. R.C.C. arts. 940, 942.
 "The universal legatee is invested with the ownership and seizin where there are no forced heirs at the death of the testator." Tulane University v. Assessors, 40 So. 445, 115 La. 1028.
We are aware that the opinion we have expressed is apparently at variance with the opinions of this court cited by defendant and warrantor, but in the cited cases the facts are quite different from the facts of this case, and it does not appear that the question of adverse possession as the basis for the beginning of the prescription pleaded was raised or considered in any of those cases.
It may be true that the probate of a will and an ex parte judgment ordering its execution is sufficient to give rise in time to a right of property, even though there be a forced heir, nevertheless, if, before execution is had, litigation is commenced contesting the validity of the will and the order of execution, and thereafter, on the joint application of the legatee and contestants of the will, the execution thereof is held in abeyance, and an order is obtained from the court appointing executors to administer the estate, all of which was done in this case, it is clear that a situation is presented here which has not heretofore appeared in any of the cases cited by either counsel; and it is likewise clear that the universal legatee never had adverse possession of the property, in fact, never possessed any part of it, for the simple reason that, until the administration *Page 798 
of the succession was closed, its property and effects were in the possession of the executors until the title to it was conveyed by the universal legatee and the collateral relations of the deceased to the Eureka Homestead Society, in which transfer the executors of the estate acquiesced. It will be noted that no judgment recognizing any one as the heir or heirs of Edward Cunningham, deceased, and sending them into possession of the estate as such, was ever obtained, and that the final judgment recognizing the second wife of deceased as his universal legatee and sending her into possession of the estate was obtained long after the property had been sold.
The views we have expressed, and the unusual circumstances surrounding the succession proceedings which lead up to and culminated in the sale of the succession property without any order of court authorizing or approving said sale, by parties claiming to be the legatee and sole heirs of deceased, all of whom not only ignored the presence and rights of a forced heir, but denied his existence, leads us to the conclusion that, in this case, the prescriptive period which operates as a bar to the assertion of the forced heirs' action for the reduction of the excessive donation began to run at the date of the sale of the property, which date was the beginning of adverse possession.
It is the accepted rule that title to real estate is not lost by prescription until another person has had actual possession of it, adverse to the owner, for the prescriptive period of time. R.C.C. 496; Generes v. Bowie Lumber Co., 79 So. 413, 143 La. 811; Harang v. Golden Ranch Co., 79 So. 768, 143 La. 1021; Roussel v. Railway Co., 93 So. 758, 152 La. 517; Harang v. Bowie Lumber Co., 81 So. 769, 145 La. 96; Dew v. Hammett, 91 So. 523, 150 La. 1094. The property involved in this suit was sold to the Eureka Homestead Society on March 9, 1917. This was *Page 799 
the beginning of adverse possession, and the petition in this suit was filed by plaintiff on August 11, 1921, within five years from the date of the sale. Unless we should adopt the view urged by counsel for defendant and warrantor and hold that prescription began to run at the date of the probate of the will, it is apparent that neither of the pleas of prescription are tenable. Under the circumstances which are presented in this case, we cannot adopt that view and our conclusions are in no sense influenced by the doctrine, "Contra non valentem agere non currit præscriptio," which former decisions of this court have ignored, if the court has not actually repudiated that doctrine.
For these reasons, we are of the opinion that the judgment of the lower court should be avoided, the pleas of prescription should be overruled, and plaintiff should have judgment recognizing him as the forced heir of Edward Cunningham, deceased, and the owner, as such, of an undivided one-third interest in the real estate described in the petition. We think that the evidence shows that $30 per month was fairly and equitably a one-third of the rental value of the property from judicial demand, and, although no reconventional demand was filed in this suit, the testimony admitted shows that defendants expended $2,000 in improving the property and that these improvements enhanced its rental value. We think plaintiff is entitled to judgment for $30 per month from judicial demand, as rent, subject to a credit of $666.66 2/3; the said sum being one-third of the cost of the improvements placed upon the property.
For these reasons, the judgment appealed from is avoided, and it is now ordered and decreed that there be judgment in favor of plaintiff, Joseph Emmett Gahn, and against defendant Mrs. Iska Brown, wife of Charles Kohlmeyer, recognizing and decreeing Joseph Emmett Gahn to be the owner of an undivided *Page 800 
one-third interest in and to two lots of ground, with the improvements thereon, and the rights, ways, privileges, etc., thereto belonging situated in the Sixth district of New Orleans in square No. 396, bounded by Pitt, Atlanta, Dufossat and Valmont streets, designated as lots Nos. 12 and 13, each measuring 32 feet 5 inches front on Dufossat street by a depth between parallel lines of 120 feet, and sending him into possession thereof as owner.
It is further ordered, adjudged, and decreed that there be judgment in favor of Joseph Emmett Gahn, plaintiff, and against Mrs. Iska Brown, wife of Charles Kohlmeyer, for $803.33, being the sum of the difference between one-third of the rental value of the property from judicial demand and one-third of the cost of improvements placed thereon by defendant.
It is further ordered, adjudged, and decreed that there be judgment in favor of defendant, Mrs. Iska Brown, wife of Charles Kohlmeyer, and against Dr. P.B. Salatich, warrantor, as prayed for in defendant's answer, except as to the judgment for $803.33, for rents less the improvements.
It is further ordered, adjudged, and decreed that there be judgment in favor of Dr. P.B. Salatich, warrantor of defendant, and against Mrs. Loretta Johnson, wife of Joseph Hellen, Mrs. Elizabeth Grace, divorced wife of Edward Cunningham, deceased, John Louis Cunningham, Mrs. Mary Kehoe, widow of Edward Foley, Mrs. Mary Cunningham, widow of Thomas Houston, and now wife of William F. Brooks, as prayed for in warrantor's answer, and that the costs of this appeal be paid by defendant.
O'NIELL, C.J., dissents, being of the opinion that the prescription pleaded is prescription liberandi causa.
OVERTON, ROGERS, and ST. PAUL, JJ. concur in decree. *Page 801 
 On Rehearing.